**JOSEPHINE MOON,**
Plaintiff

v.

**FALEMALAMA GAUTA (aka GAUTA FALEMALAMA aka GAUTA F. LENIU),**
**PEPA TAELEIFI & MAFATUA TAELEIFI,**
**and ALEKI NOA,**
Defendants

No. 3129-1975

High Court of American Samoa

Civil Jurisdiction, Trial Division

December 16, 1975

Plaintiff filed this action for declaratory relief seeking a declaration by the Court that she is the owner of certain real property in American Samoa. She alleged that the grantor of that property conveyed it to her on December 14, 1973, and that she recorded her deed on February 19, 1974. The defendants, on March 16, 1973, entered into a contract with the same grantor for the purchase of a tract of land adjacent to that subsequently conveyed to the plaintiff. The deed to the defendants' property, not delivered until May 28, 1974, was registered on June 4, 1974. The

boundaries it describes encompass a small portion of the land described in the plaintiff's earlier deed.

The usual manner of judicially settling the competing claims of various grantees of real property purchased from a common grantor is through a quiet title action. Although it has been said that an action to quiet title may be considered as one for declaratory relief, *Amick v. Elwood*, 314 P.2d 944 (Wyo. 1957), we are not ready to freely substitute one proceeding for the other. Therefore, except when the only method of settling a land ownership dispute is by an action for declaratory relief, and we do not anticipate the circumstances under which such a necessity might arise, we will entertain such disputes only in the form of an action to quiet title.

For two reasons, the instant case will be considered as though brought in the manner just described. First, the Court is reluctant to apply a newly announced rule in the case in which it is expressed where to do so would merely result in dismissal of the cause without prejudice and subsequent refiling with the only necessary alteration being the title of the complaint. Second, under Federal Rule of Civil Procedure 15(b), the Court may consider a pleading amended to conform to the evidence introduced with the consent of the parties at the trial. This procedure is "intended to promote the objective of deciding cases on their merits rather than . . . on the basis of a statement of the claim or defense that was made at a preliminary point in the action and later proves erroneous." Wright & Miller, Federal Practice and Procedure: Civil § 1491. The rule further provides that the result of a trial should not be affected by the failure of a party to move for such an amendment.

Although the complaint filed here was for declaratory relief, the facts disclosed, the issues argued by the parties, and the relief prayed for were appropriate to a suit to quiet

title. The plaintiff has alleged the existence of a deed belonging to the defendant, not invalid on its face, which is adverse to her interest in and may impair her title to certain real property that she has lawfully acquired possession of and to which she has prima facie legal title. The plaintiff has also alleged that the defendants have no "estate, right, title or interest whatever in said land" and asked that the Court declare her the owner and bar the defendants from asserting any adverse claim in the land. The complaint is clearly one to quiet title and we will not dismiss the action merely because it was called something else.

■ The Court finds that the plaintiff received her deed from the grantor and registered it, as required by 27 A.S.C. § 601(a), before the defendants' deed was delivered. At that time, title to the property described in her instrument passed to her and the grantor lost all of his interest therein. The instrument the defendants signed on March 16, 1973, was an executory contract which contemplated a further instrument to pass title to the property. Under 27 A.S.C. § 601(b), the defendants are held to have had notice of the contents of the plaintiff's duly registered, i.e. recorded, deed at the time they accepted delivery of their own. Their subsequent deed, therefore, has no effect on the plaintiff's ownership of the property described in her instrument.

■ The defendants contend that although the plaintiff's title to the disputed land may be superior to their own insofar as the common law of real property and the American Samoa registration, i.e. recording, act are concerned, the conveyance to the plaintiff is void nonetheless because she is not a "full-blooded Samoan." The American Samoa Code allows the alienation of *freehold land* to a person with less than one-half Samoan blood, forbids, with one exception, the alienation of *communal land* to any person who is not a full-blooded Samoan, and

allows any *other land* to be alienated to any person with at least "one-half [Samoan] blood." 27 A.S.C. § 204(b). The property in the instant case is individually owned and therefore comes within the category of *other land*. As a result, the conveyance to the plaintiff is not void if she has at least one-half Samoan blood.

 From the evidence introduced at the trial, we have concluded that the plaintiff was born in Western Samoa, that her mother was a full-blooded Western Samoan, and that her father had one-half Western Samoan blood. The question which arises, is whether an individual who has seventy-five percent Western Samoan blood but is not an American Samoan has, for the purposes of the statute referred to above, at least one-half Samoan blood? We think this must be answered in the affirmative.

As earlier stated, the Fono has restricted alienation of land in American Samoa, other than freehold,[1] to persons with "native" blood. A "native" is defined in the Code as a "full-blooded Samoan," not as a full-blooded American Samoan. We think that if the Fono had intended to restrict the alienation of individually owned land to persons having one-half or more American Samoan blood, it would have done so expressly.

 In drafting these statutes, the Fono was acutely aware of the distinction between the words Samoan[2] and

---

[1] "Freehold lands" are defined in 27 A.S.C. § 201 as:

"(2) . . . all those lands included in court grants prior to 1900 which have not, at the request of the owner, been returned to the status of other land in American Samoa surrendering their freehold characteristics; . . ."

[2] Section 401 of Title 27 of the American Samoa Code sets forth the only statutory definition of a Samoan or a person of Samoan descent. It provides that those terms shall include residents of the territory who have "one-half Polynesian, Melanesian, or Micronesian blood. . . ." The application of this definition, however, is expressly restricted to Chapter 5 of Title 27 and so cannot be employed in the present case which involves the meaning of "Samoan" as used in an entirely different chapter.

We note, however, that the terms defined in 27 A.S.C. § 401 are never, in fact, used in Chapter 5, Title 27 and that the section is, for all practical purposes, a nullity. In Title 12 of the 1961 Edition of the Code, the provisions now comprising Chapter 5, Title 27, with the exception of section 401, were

American Samoan ·and of the implications of their use of one term rather than the other. This is evidenced by 27 A.S.C. § 204(b) which provides that a person who is not a full-blooded Samoan, but who has at least one-half Samoan blood, must also have been born in and be a resident of American Samoa *as well as* a "descendant of a Samoan family" before he can be conveyed communal land.

We find that the plaintiff has at least "one-half native blood" and that she registered her title to the property described in her deed before the defendants registered their title to the property described in their deed. We hold, therefore, that the defendants have no interest in, or right or title to, the land described in the plaintiff's deed and that the plaintiff is now, and has been since February 19, 1974, the owner of that land as against the defendants.

---

codified under Chapter 12.02. Section 401, however, was codified under Chapter 12.01 together with enactments in which the terms "Samoan" and "Samoan descent" were actually used. In the process of revision, it appears that the definitional section was simply mistakenly separated from those relevant provisions.